## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NIRAVKUMAR VITTHALBHAI PATEL,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., and LEXISNEXIS RISK SOLUTIONS, INC.,<br><br>Defendants. | Case No.: 3:25-cv-01916<br><br>**COMPLAINT WITH**<br>**DEMAND FOR JURY TRIAL** |

Niravkumar Vitthalbhai Patel ("Plaintiff") a living, breathing 40-year-old consumer, respectfully brings this case on an individual basis, against Defendants Experian Information Solutions, Inc. ("Experian") and LexisNexis Risk Solutions, Inc. ("LexisNexis") (Experian and LexisNexis collectively hereinafter the "Defendants") for actual, statutory, and punitive damages and costs, as well as attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, arising out of Defendants' inaccurate mixing Plaintiff's credit file with another Connecticut consumer and inaccurately reporting Plaintiff as deceased.

## PARTIES

1. Plaintiff is a natural person residing in Glastonbury, Connecticut, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

2. Defendant Experian is a corporation with a principal place of business located at 475 Anton Blvd., Costa Mesa, California 92626, and is authorized to do business in the State of Connecticut, including within this District.

3. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

4. Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

5. Defendant LexisNexis is a corporation with a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005, and is authorized to do business in the State of Connecticut, including within this District.

6. LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

7. LexisNexis is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA, a federal law, to be brought in any appropriate court of competent jurisdiction.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

10. Specifically, Defendants inaccurately mixed Plaintiff, a Connecticut consumer, with another unrelated Connecticut consumer.

11. Defendants issued inaccurate reports concerning Plaintiff to potential creditors and/or insurers doing business in Connecticut.

12. Specifically, Experian issued reports about Plaintiff to potential creditors doing business in Connecticut that those creditors used to evaluate Plaintiff's Connecticut application for a home equity line of credit ("HELOC") on Plaintiff's Connecticut home.

13. Similarly, LexisNexis issued reports to an insurer doing business in Connecticut, and that report was used to evaluate Plaintiff's Connecticut application for a HELOC on Plaintiff's Connecticut home.

14. Plaintiff prepared dispute letters from Connecticut, and Defendants sent their responses to her letters to Plaintiff in Connecticut.

15. In evaluating Plaintiff's disputes, Defendants reviewed the Connecticut-based information of the inaccurately mixed consumer, giving unreasonable weight to the fact that the state of residence was shared between Plaintiff and the mixed consumer, even though other characteristics did not match, including the fact that Plaintiff is alive and the mixed consumer is deceased.

## FACTS

### Plaintiff's Incorrect & Inaccurate Status as Deceased

16. In or about September 2024, Plaintiff's wife received a letter from Plaintiff's life insurance company requesting his death certificate.

17. Upon receiving the letter, Plaintiff immediately contacted the insurance company to report that she was, in fact, alive.

18. The life insurance company acknowledged the mistake but did not disclose who had provided them with the erroneous information.

19. At the time, Plaintiff did not consider the matter serious until May 2025, when he applied for two HELOCs.

20. On May 1, 2025, Plaintiff completed and submitted an application for a HELOC with Discover Bank ("Discover").

21. On May 1, 2025, Discover issued an adverse action notice to Plaintiff.

3

22. Within that letter, Discover communicated that it had denied Plaintiff's credit application without providing a specific reason for the denial.

23. Plaintiff was confused by the denial given his excellent credit score of approximately 830.

24. On or around May 13, 2025, Plaintiff contacted Discover via telephone to inquire about the denial.

25. Discover informed him that the reason for the denial was a "deceased" notation on his Experian credit report.

26. Concerned about the impact this would have on his credit, Plaintiff called Experian that same day.

27. While Experian confirmed that his Social Security Number ("SSN") was active, an unusual issue occurred.

28. When Plaintiff entered his SSN as instructed by the automated system, the call was disconnected three (3) times.

29. However, when he entered his wife's SSN, the system successfully connected, allowing him to speak with a representative.

30. Upon information and belief, Experian misled Plaintiff to believe that Plaintiff was not being reported as deceased.

31. In or about May 2025, Plaintiff also completed and submitted an application for a HELOC with Figure Lending LLC d/b/a Figure ("Figure"), which describes itself as "America's #1 Non-Bank HELOC Lender."

32. However, on May 23, 2025, Plaintiff received an email from Figure denying his application.

33. Critically, Figure communicated that Plaintiff's application was denied due to "Experian reporting you as deceased."

### Plaintiff's June 2025 Dispute to Defendant Experian

34. On or about June 11, 2025, after becoming concerned that he is being reported as deceased in his credit report, Plaintiff sent a dispute letter to Experian, via certified mail.

35. Plaintiff disputed Experian's reporting him as "deceased" and attached documents to support his dispute.

36. Plaintiff requested that Defendant reinvestigate the disputed information and correct the reporting.

37. On June 25, 2025, Experian sent dispute results to Plaintiff.

38. Per the dispute results, Experian did not address any deceased remark but instead removed other items from Plaintiff's credit report.

### Plaintiff's Mixed Credit File with LexisNexis

39. Shocked, worried, and confused, Plaintiff requested a copy of his report from Defendant LexisNexis.

40. On June 2, 2025, Plaintiff received his LexisNexis Disclosure Report dated May 14, 2025.

41. Upon reviewing the report, Plaintiff discovered it was infested with inaccurate and/or mixed information.

42. LexisNexis was reporting more than one name variation that did not belong to Plaintiff.

43. LexisNexis reported a date of death, 09/18/2024, that did not belong to Plaintiff and was not accurate.

44. LexisNexis reported fifteen (15) Connecticut address variations that did not belong to Plaintiff.

45. LexisNexis reported several phone numbers that did not belong to Plaintiff.

46. LexisNexis reported several email addresses that did not belong to Plaintiff.

47. LexisNexis reported about twenty (20) addresses that did not belong to Plaintiff.

48. LexisNexis reported three (3) business association records affiliated with NIRAV INC that did not belong to Plaintiff.

49. LexisNexis reported three (3) insurance policies that did not belong to Plaintiff.

50. LexisNexis reported an insurance claim that did not belong to Plaintiff.

51. LexisNexis reported driver services records and driver licenses that did not belong to Plaintiff.

52. LexisNexis reported a License Status: DED. Upon information and belief, the status "DED" falsely indicated that Plaintiff is "Deceased."

53. As indicated by the inquiries section, American Express accessed Plaintiff's LexisNexis report three (3) times on May 13, 2025, and twice on April 11, 2025; the "deceased" notation on Plaintiff's LexisNexis report was thereby shared with a third party.

54. By reporting the aforementioned identification records in Plaintiff's report to American Express, despite the fact that the records and/or information do not belong to Plaintiff, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's consumer reports, in violation of 15 U.S.C. § 1681e(b).

55. Moreover, Defendant Lexis Nexis did not have a permissible purpose for furnishing information about Plaintiff to the American Express on the above-referenced dates.

**Plaintiff's July 2025 Dispute to Defendant LexisNexis and Defendant LexisNexis's Unreasonable Dispute Reinvestigation**

56. On or about July 9, 2025, after becoming concerned that his LexisNexis Report contained serious inaccuracies and was mixed, Plaintiff sent a dispute letter to LexisNexis.

57. Plaintiff disputed the records that do not belong to him.

58. In doing so, he attached necessary documents in support of his dispute and a copy of proof of his identity.

59. Plaintiff requested that Defendant reinvestigate the disputed information and correct the reporting.

60. On August 1, 2025, Defendant LexisNexis sent dispute results to Plaintiff, along with an updated copy of Plaintiff's credit report.

61. However, LexisNexis removed some, but not all, of the disputed information.

62. LexisNexis left a name (Mira Patel) and Connecticut address that did not belong to Plaintiff; three (3) business association records; numerous insurance policy records that did not belong to Plaintiff; an automobile insurance claim that did not belong to Plaintiff; numerous driver license records not belonging to Plaintiff; and the "Deceased" indicator which remarkably remained despite the fact Plaintiff himself made the request to correct the inaccurate report.

63. LexisNexis failed to conduct a reasonable investigation of Plaintiff's June 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

64. Instead, LexisNexis, in a facially self-contradictory manner, "verified" some mixed information while maintaining other mixed information.

65. Thereafter, LexisNexis failed to correct or delete the inaccurate records appearing in Plaintiff's credit report and continued to mix his information with a deceased individual.

66. LexisNexis failed to unmix Plaintiff's credit file from that of the likely other deceased consumer, and Defendant continued to report the other apparently deceased consumer's information on Plaintiff's credit file.

67. On or about October 22, 2025, Plaintiff applied for insurance with GEICO, seeking a better rate than his current policy.

68. Plaintiff's rate as offered by GEICO was inflated due to the false records published to GEICO by Defendant.

69. Plaintiff was offered an inflated rate of $2,123.98 for six (6) months.

70. Based on Defendant's report, GEICO falsely identified Jagdishchandra Patel, age 66, and Jyoti Patel, age 65, as a member of Plaintiff's household.

71. This was highly concerning to Plaintiff and felt like a serious violation of his privacy and sense of security in his reputation and own identity.

72. It also resulted in Plaintiff receiving a much more expensive quote for automobile insurance.

73. As a result of the inaccurate reporting, Plaintiff did not accept the GEICO policy.

74. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, credit denials; the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit applications of another; damage by lost reputation for creditworthiness and insurability; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the

expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and garden-variety emotional distress.

75. Defendants' policies and procedures are insufficient to correct inaccurate reporting.

76. Among many other shortcomings that place it in violation of the FCRA, Defendants do not request or require a death certificate from any of their data sources which advise that a consumer is "deceased" before placing a "deceased" mark in that consumer's credit file.

77. Defendants do not have any procedure to notify consumers (including next of kin or executor or administrator of the consumer's estate) when an "X" or "U/UNDESIGNATED" deceased code is furnished to them to be placed in said consumer's credit file or report.

78. Defendants failed to reasonably and independently verify a deceased notation with public record information and other sources, including the Social Security Administration's ("SSA") Master Death File.

79. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Defendants do not employ adequate procedures to assure that a consumer is in fact actually deceased before placing the "deceased" mark in that consumer's file.

80. Once a "deceased" mark is placed upon a consumer's report, Defendants will not calculate and will not provide a credit score for that consumer, instead reporting it as "N/A," effectively zero.

81. Defendants are aware of the shortcomings of their procedures, which caused Plaintiff's injuries in this action, and intentionally choose not to comply with the FCRA to lower their costs.

82. Defendants are on notice of the shortcomings of its procedures based on, *inter alia*, manifold consumer and/or governmental complaints, based on similar or the same FCRA violations, submitted via the Better Business Bureau, Consumer Financial Protection Bureau, arbitration, and/or filed and adjudicated in court; as well as consent decrees and jury verdicts related to same.

83. Plaintiff was unjustly denied two HELOC loans by different creditors due to the "deceased" notation on his Experian credit report.

84. These denials, and Defendants' continued false reporting, have caused Plaintiff to refrain from pursuing any further loan applications.

85. As a result of these denials, Plaintiff has incurred significant time and effort trying to resolve the issue, including making numerous calls to creditors, credit bureaus, and the SSA.

86. Plaintiff has also had to prove to business partner(s) who received a copy of Plaintiff's report that he is not "deceased" and not otherwise rightfully associated with a deceased mark for any reason.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**Against all Defendants**

87. Plaintiff reincorporates the preceding allegations as if stated herein.

88. Defendants Experian and LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

89. Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

90. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

91. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## Against all Defendants

92. Plaintiff reincorporates the preceding allegations as if stated herein.

93. Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

94. Defendants' conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

95. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

96. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681b(a)
## Furnishing a Credit Report Without a Permissible Purpose
## Against all Defendants

97. Plaintiff reincorporates the preceding allegations as if stated herein.

98. Defendants violated 15 U.S.C. § 1681b(a) by selling Plaintiff's credit report to third parties, whom did not have a permissible purpose to Plaintiff's credit report, in relation to the credit application of an unrelated consumer.

99. Defendants' conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

100. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendants negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: Flushing, New York
      November 17, 2025                      Respectfully submitted,

                                                 **CONSUMER ATTORNEYS, PLLC**

                                                 */s/ Emanuel Kataev, Esq.*
                                                 Emanuel Kataev, Esq.
                                                 6829 Main Street
                                                 Flushing, NY 11367-1305
                                                 (718) 412-2421 (office)
                                                 (718) 489-4155 (facsimile)
                                                 ekataev@consumerattorneys.com

                                               *Attorneys for Plaintiff*
                                               *Niravkumar Vitthalbhai Patel*